UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RAYMOND JEAN BOE                                    CIVIL ACTION

VERSUS                                              NO. 11-1144

MICHAEL J. ASTRUE, COMMISSIONER                     SECTION "R" (3)
SOCIAL SECURITY ADMINISTRATION

REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA") and supplemental security income ("SSI") under Title XVI of the SSA. The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

I.    BACKGROUND

Plaintiff filed an application for DIB and SSI on May 15, 2009, alleging a disability onset date of November 21, 2007. (Adm. Rec. at 103-13). Plaintiff was 54-years old at the time of the alleged onset date of disability. (*Id.* at 103). He was thus an individual closely approaching advanced age on the alleged disability onset date. (*Id.* at 17). Plaintiff has a high school education and past relevant work as an automobile mechanic, a swimming pool servicer and a security guard.

(*Id.* at 17).

Plaintiff's application was denied at the initial level on July 17, 2009. (*Id.* at 64-67). Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ") on August 14, 2009. (*Id.* at 70-71). ALJ Darren Hammer held a hearing on March 24, 2010 at which plaintiff appeared and was represented by counsel. (*Id.* at 28-60). Vocational Expert ("VE") Crystal Younger also testified at the hearing. (*Id.* at 46-60).

In a decision dated April 28, 2010, the ALJ denied benefits to plaintiff. (*Id.* at 10-19). The ALJ determined that plaintiff has the severe impairments of hypertension, history of polysubstance abuse and depression but that the impairments or combination of impairments do not meet or medically equal a listed impairment. (*Id.* at 12-13). The ALJ further found that plaintiff had the residual functional capacity ("RFC") to perform medium work except that he can only perform simple and repetitive job tasks and only have occasional public contact in an indoor work environment. (*Id.* at 14). He further concluded that plaintiff can not perform his relevant past work. (*Id.* at 17). The ALJ found plaintiff not disabled at step five of the sequential evaluation and concluded that, considering plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (*Id.* at 18).

Plaintiff timely asked the Appeals Council to review the ALJ's unfavorable decision. (*Id.* at 24). On March 29, 2011, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-3). As a result of the Appeals Council's denial of plaintiff's request for review, the ALJ's April 28, 2010 decision denying plaintiff's claims for benefits became the Commissioner's final decision for purposes of judicial review. Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive.

*Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

## III. ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant, such as the plaintiff, is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but cannot, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901 t - 416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001), the Fifth Circuit restated the five-step

procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 239 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make his disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work

history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV. ISSUES ON APPEAL

There are four issues on appeal:

(1) Whether substantial evidence supports the ALJ's conclusion that certain of plaintiff's physical and/or mental impairments were not severe.

(2) Whether the ALJ properly evaluated plaintiff's credibility.

(3) Whether substantial evidence supports the ALJ's RFC determination.

(4) Whether the ALJ erred when he posed a hypothetical question to the VE.

## V. ANALYSIS

### 1. Whether substantial evidence supports the ALJ's conclusion that certain of plaintiff's physical and/or mental impairments were not severe.

Plaintiff first argues that the ALJ erred when he concluded that plaintiff's impairment to his right lower extremity – or right-leg weakness – is not severe. An impairment that is "not severe" must be a slight abnormality that has such minimal effect on the individual that it would not be expected to interfere with the ability to work, irrespective of age, education, or work experience. *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985); Social Security Ruling ("SSR") 96-3p, 1996 WL 374186 (July 2, 1996). SSR 96-3p provides that a determination that an individual's impairment is not severe requires a careful evaluation of the medical findings that describe the impairment and an informed judgment about the limitations and restrictions the impairment and related symptoms impose on the individual's mental ability to do basic work activities. *See* SSR 96-3p. If the ALJ concludes that the symptoms cause a limitation or restriction having more than

a minimal effect on an individual's ability to do basic work activities, then the ALJ must find that the impairment is severe and proceed to the next step in the sequential evaluation process, even if objective evidence would not in itself establish that the impairment is severe. *See id.*

Substantial and objective medical evidence supports the ALJ's conclusions here. The ALJ concluded that plaintiff's "[r]ight lower extremity weakness, although alleged in the medical evidence[,] was not confirmed by an electromyography and nerve condition study (EMG/NCS)." (Adm. Rec. at 13). He also found that there were no records that revealed a functional limitation on plaintiff's ability to work. (*Id.*). The ALJ noted that an EMG/NCS "taken September 21, 2007, was entirely normal." (*Id.* at 15, 266). During a July 13, 2009 examination by Dr. Miljana Mandich, plaintiff ambulated without any noticeable difficulty, without dragging of his right leg or stroke gait. (*Id.* at 15, 281). Mandich noted that plaintiff's extremities were normal with full range of motion of all joints and no complaints. (*Id.* at 15, 280). Mandich also found that plaintiff had "1+ deep tendon reflexes on the left and stronger 2+ reflexes in the *right* extremities." (*Id.*) (emphasis added).[1] The ALJ also determined that plaintiff's right-leg complaints were not supported by a negative MRI finding, (*id.* at 16, 190), and noted that Mandich did not assign any functional limitations to plaintiff. (*Id.* at 16).

Plaintiff cites numerous instances in the record when he complained of right-leg pain and weakness to Dr. Christie Montegut and Mandich. (*See id.* at 222-24, 266, 277, 280-81). But

---

[1] Deep tendon reflexes are graded. "1+" means a slight but definitely present response; may or may not be normal. "2+" means a brisk response; normal.

7

Montegut only diagnosed plaintiff with mild motor weakness in the right leg. (*Id.* at 224). And while plaintiff complained to Mandich of right-leg pain, the Court has already noted Mandich's diagnosis above. Plaintiff's "isolated comments . . . are insufficient, without further support, to raise a suspicion of non-exertional impairment." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Pierre v. Sullivan*, 884 F.2d 799, 802-03 (5th Cir. 1989)). Neither Montegut nor Mandich assigned any functional limitation to plaintiff nor referred him to a nerve specialist. (*Id.* at 15-16).[2] This argument is without merit.

Plaintiff also contends that the ALJ erred when he failed to conclude that plaintiff's headaches are severe impairments. Citing the record, plaintiff argues that he consistently complained of chronic headaches to his treating physicians and Mandich. The ALJ noted, however, that plaintiff's headache complaints were sparse and that no treatment resulted from them. (*Id.* at 15); *see also Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (holding that ALJ "not precluded from relying upon the lack of treatment as an indication of nondisability."). And while the ALJ noted that Mandich diagnosed plaintiff with, *inter alia*, a history of frequent headaches, Mandich did not assign to plaintiff any functional limitations based on her diagnosis. (*Id.* at 16). Moreover, the ALJ found that the evidence in the record revealed that plaintiff's headaches were controlled by medication. (*Id.* at16); *see also Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as

---

[2] Indeed, Montegut wrote a letter to plaintiff in which she informed him that she could no longer prescribe hydrocodone or other controlled substances to him because pharmacy insurance claims data revealed that plaintiff was receiving hydrocodone from another physician, and he had failed to inform her of the other physician. (*Id.* at 219).

a basis for a finding of disability.").

Relying heavily on the findings of Dr. Don Fontenelle, plaintiff also contends that his anxiety and chronic stress are severe impairments. Plaintiff notes that Fontenelle opined that plaintiff's ability to tolerate stress and the pressures associated with day-to-day work activities is poor and that his ability to perform personally, socially and occupationally was weak. (*Id.* at 286). Plaintiff alleges that the records reveal that a Dr. Rooney prescribed Xanax to him to treat his anxiety from October 29, 2007 through December 10, 2009. (*Id.* at 253-54).

To support his conclusion that plaintiff's anxiety and chronic stress are not severe impairments, the ALJ relied on the state agency psychiatric review technique, which revealed no mental impairment of plaintiff to be severe. (*Id.* at 17, 299). And while he noted Fontenelle's limitations, the ALJ also noted that Fontenelle evaluated plaintiff on only one occasion and administered minimal psychological testing. (*Id.* at 16-17). When good cause is shown, an ALJ may give less weight, little weight, or even no weight to a physician's opinion. *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005). A doctor's statement lacks strong persuasive weight when it is not supported by medically-acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence. *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-2p, 1996 WL 374188, at *2. The ALJ properly accorded little weight to Fontenelle's opinion after finding no objective medical evidence in the record to support it.

Plaintiff relies on a February 25, 2004 x-ray to support his argument that the ALJ erred when he failed to conclude that plaintiff's degenerative disc disease is a severe impairment. The x-ray

9

revealed some chronic degenerative change in plaintiff's lower lumbar region including some facet joint degenerative change at L3-4, L4-5 and L5-S1. (Adm. Rec. at 209). It also revealed moderate narrowing at L5-S1. (*Id.*). Plaintiff claims that the ALJ erred by failing to mention the x-ray.

But the regulations require only that the Commissioner develop a claimant's complete medical history as follows:

> Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application.

20 C.F.R. § 404.152(d). Here, plaintiff filed his application on May 15, 2009, alleging a disability onset date of November 21, 2007. Because the Commissioner was not required to include a 2004 x-ray in developing plaintiff's complete medical history, plaintiff's reliance on the x-ray does not support his argument that his degenerative disc disease is a severe medical impairment.

Further, plaintiff worked as a pool cleaner at the time of the x-ray. (Adm. Rec. at 156). The VE described the job of pool cleaner as "a semi-skilled level-four job in the medium duty category.". (*Id.* at 49). The Commissioner is correct to note that plaintiff's ability to perform medium work despite the findings in the x-ray supports the ALJ's conclusion that plaintiff can perform medium work even with his degenerative disc disease. (*Id.* at 14).

With regard to his obesity, plaintiff states in a conclusory fashion: "Further, the medical records show that plaintiff's height is about 5'7" to 5'8" and his weight has ranged from around 199 pounds to 213 pounds, which results in a BMI of 30.3 to 32.9, and a BMI of thirty or higher is classified as obese." (Pl.'s Mem. Supp. at p. 9). Plaintiff points to no evidence in the record to

10

support a diagnosis of obesity nor any evidence that a physician restricted his functional limitations because of his alleged obesity.

Accordingly, these arguments are without merit. Substantial evidence supports the ALJ's conclusion that plaintiff's right-leg weakness, headaches, anxiety, chronic stress, degenerative disc disease and obesity are not severe impairments.

### 2. Whether the ALJ properly evaluated plaintiff's credibility.

Plaintiff also challenges the ALJ's finding that his "statements were not credible to the extent that they were inconsistent with his . . . RFC . . . assessment." (Pl.'s Mem. Supp. at p. 9). He asserts that "it is not sufficient for the ALJ to simply make the statement that 'the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above [RFC] assessment.'" (*Id.* (citing Adm. Rec. at 15)). Plaintiff contends that the ALJ failed to specify the weight that he gave to plaintiff's statements and the reasons for that weight. He also argues that the ALJ did not follow the two-step analysis for evaluating pain and other symptoms set forth in the regulations and SSR 96-7p.

It is well settled that the ALJ must consider subjective evidence of pain, but it is within the discretion of the ALJ to determine the pain's disabling nature. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (citing *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981) & *Jones v. Heckler*, 702 F.2d 616, 621-22 (5th Cir. 1983)). The ALJ's determination is entitled to considerable deference. *Id.* (citing *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986)). The determination whether an applicant is able to work despite some pain is within the province of the administrative agency and should be upheld if supported by substantial evidence. *Heckler*, 702 F.2d at 622.

"Disabling pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment." *Id.* (citing *Haywood v. Sullivan*, 888 F.2d 1463, 1470 (5th Cir. 1989)). Subjective complaints of pain must also be corroborated by objective medical evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citing *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989)).

SSR 96-7p, entitled "Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements," outlines the determination of a claimant's credibility.[3] "[A]n individual's statement(s) about his or her symptoms is not enough in itself to establish the existence of a physical or mental impairment or that the individual is disabled." SSR 96-7p, 1996 WL 374186, at *2. To evaluate an individual's credibility, the adjudicator must first determine whether the claimant has an impairment that could cause the alleged symptoms, and such impairment must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *Id.* Under the second prong of the two-step analysis, if the claimant's statements about "the intensity, persistence, or functionally limiting effects of pain or other symptoms" are not substantiated by objective medical evidence, "the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.* The Fifth Circuit has held that the ALJ need not give subjective evidence precedence over medical evidence but that "a resolution of conflicts between the subjective evidence and the medical evidence should depend upon the ALJ's evaluation of the credibility of the claimant's complaints of pain." *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988). Before examining the

---

[3] The Fifth Circuit has noted that while they are not binding, SSRs "may be consulted when the statute at issue provides little guidance," and that the court itself has "frequently relied upon the rulings in evaluating ALJs' decisions." *Myers*, 238 F.3d at 620.

record here, the ALJ outlined the two-step analysis in SSR 96-7p.

Plaintiff argues that he satisfies the first prong of the two-step analysis because he has been treated for hypertension, right lower extremity pain and weakness, degenerative disc disease of the lumbar spine, anxiety and depression. He asserts that these diagnoses reflect impairments that could cause his pain. He also contends that the numerous medications that he takes (Lisinopril, Lortab, Paxil, Prozac, Soma and Xanax) have known side effects – according to the National Institute of Health – that could produce the symptoms of which he complains. Because the ALJ determined that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," (Adm. Rec. at 15), plaintiff satisfies the first prong.

With regard to the second prong of the two-step analysis, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (*Id.* at 15). The ALJ then carefully outlined all of the evidence above, *i.e.*, even though the ALJ recognized plaintiff's subjective complaints of, for example, right-leg weakness, he concluded that the objective medical evidence did not support a finding that the impairments were severe enough to cause plaintiff's alleged pain.

For example, the ALJ noted that plaintiff's claim of right-leg weakness was inconsistent with a September 21, 2007 EMG/NCS that was "entirely normal." (*Id.* at 15, 266). He also explained that plaintiff's long-term complaints were not supported by the negative MRI finding. (*Id.* at 16, 190). He also noted Mandich's failure to assign any functional limitations. (*Id.* at 16). The ALJ also noted that plaintiff's complaints of headaches were sparse, and the records concerning

headaches were minimal and revealed that the headaches were controlled by medication. (*Id.*); *see also Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability.").

In addition, the ALJ twice noted plaintiff's drug-seeking behavior and even noted that – in addition to the numerous medications mentioned above – he took pain pills that a friend gave him. (*Id.* at 15-17). Indeed, and as noted above, Montegut wrote a letter to plaintiff in which she informed him that she could no longer prescribe hydrocodone or other controlled substances to him because pharmacy insurance claims data revealed that plaintiff was receiving hydrocodone from another physician, and he had failed to inform her of the other physician. (*Id.* at 15, 219). The ALJ thus properly concluded that plaintiff's drug-seeking behavior undermined his credibility.

While plaintiff points to numerous instances in the record that chronicle his complaints of pain, it is well-established that subjective complaints of pain must also be corroborated by objective medical evidence. *See Chambliss*, 269 F.3d at 522. The ALJ carefully outlined the reasons for which he discounted the severity of plaintiff's complaints of pain, and while there may be record citations to support plaintiff's argument, this Court may not re-weigh the evidence nor substitute its own judgment for that of the Commissioner. *Carey*, 230 F.3d at 135. As noted above, the Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *Arkansas*, 503 U.S. at 112-13. Here, substantial and objective medical evidence supports the ALJ's conclusion.

3. **Whether substantial evidence supports the ALJ's RFC determination.**

Plaintiff contends that the he is not capable of performing the RFC as defined by the ALJ. The ALJ found that plaintiff has the RFC to perform medium work except that he can perform simple and repetitive job tasks and only have occasional public contact in an indoor work environment. (*Id.* at 14). The regulations define medium work as follows:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 404.1567(c). Medium work also includes standing or walking for six hours and sitting for six hours in an eight-hour workday. Plaintiff argues that the record does not support the ALJ's finding that he can perform medium work.

Plaintiff first contends that the ALJ failed to include his "severe" impairments – as they are outlined above in Section (V)(1) – in his RFC determination. The Court has already rejected plaintiff's argument that the ALJ erred when he concluded that the impairments are not severe. Accordingly, this argument is without merit.

Plaintiff also maintains that the ALJ erred when he failed to evaluate a third-party function report by Rose Boe, plaintiff's ex-wife. Ms. Boe stated that she stops by plaintiff's apartment on a daily basis because her son lives with him. (Adm. Rec. at 132). She noted that plaintiff sleeps a lot, and she finds him depressed. (*Id.*). She stated that plaintiff walks with a limp and that he always complains about his pain. (*Id.*). She also reported that plaintiff has difficulty cleaning dishes because he can not stand for long periods of time, and he is unable to do yard work because he can not push the lawn mower. (*Id.* at 134-35). Ms. Boe also noted that plaintiff has difficulty with kneeling and squatting because he has trouble standing back up, and plaintiff gets out of breath

15

walking to get the mail. (*Id.* at 137).

Plaintiff contends that Ms. Boe's function report supports his testimony at the administrative hearing and is consistent with his complaints to his treating physicians. While that may be true, the ALJ is not required to consider third-party evidence from relatives and friends. In *Harrel v. Brown*, the Fifth Circuit noted that Harrel's family and friends had written letters to confirm Harrel's allegations of pain. 862 F.2d 471, 482 (5th Cir. 1988). The Fifth Circuit held that the ALJ was well within his discretion to reject the letters:

> However, these writings show no more than the existence of a secondary pain component to Harrell's pain complaints. Supporting, objective findings are important to the disability determination because the observations of an individual, particularly a lay person, may be colored by sympathy for the affected relative or friend and influenced by that person's exaggeration of his limitation. *See Fitzsimmons v. Matthews*, 647 F.2d 862, 864 (8th Cir. 1981).

*Id.* This Court agrees. The ALJ here was well within his discretion to disregard Ms. Boe's third-party function report.

Plaintiff also argues that the results of the consultative examination by Mandich are consistent with Ms. Boe's third-party function report and support his argument that he can not perform the RFC assigned by the ALJ. But the ALJ noted that even after Mandich noted plaintiff's shortness of breath on exertion, she did not assign to plaintiff any functional limitation. (Adm. Rec. at 16). Moreover, the Court has already held that Mandich's report contained substantial evidence to support the ALJ's contrary conclusion.

Plaintiff next asserts that a proper application of the Medical-Vocational Grid Rules ("the Grids") supports a finding that he can only perform sedentary or – at the most, light – work.

16

Plaintiff states that because he was approaching advanced age at the time of his application, has a high school education, and his acquired skills are not transferable to sedentary work, he should have been found disabled under the Grids. Plaintiff thus contends that considering his age, education and previous work experience and, given the combination of severe impairments, he is disabled under the Grids. But stating it simply does not make it so. Plaintiff provides no legal ground under which the ALJ may have erred when he concluded that plaintiff can perform medium work under the Grids.

Plaintiff then inconsistently argues that the ALJ should not have conclusively applied the Grids because of his non-exertional restrictions and limitations due to his depression and anxiety. In other words, plaintiff contends that the ALJ "failed to factor into his RFC analysis all of plaintiff's non-exertional restrictions and limitations. . . ." (Pl.'s Mem. Supp. at p. 15). But the ALJ *did* in fact take into account plaintiff's additional limitations of depression and anxiety when he qualified plaintiff's ability to perform light work by adding that plaintiff can only perform simple and repetitive job tasks and only have occasional public contact in an indoor work environment. (Adm. Rec. at 14, 18). The ALJ properly limited his RFC determination after taking into account plaintiff's non-exertional, additional limitations.

Plaintiff maintains that the ALJ should have questioned the VE about his additional limitations. But the ALJ did so when he asked the VE whether jobs exist in the national economy for an individual with plaintiff's age, education, work experience and RFC. (*Id.* at 18). The VE identified numerous occupations existing in significant numbers that plaintiff can perform with his RFC. (*Id.* at 18, 50-58). Indeed, the ALJ specifically asked the VE to consider the two additional limitations when she determined the jobs existing in the national economy. (*Id.* at 50-51, 53).

Accordingly, this argument lacks merit.

   4.   **Whether the ALJ erred when he posed a hypothetical question to the VE.**

Lastly, plaintiff argues that the ALJ erred when he posed a hypothetical question to the VE that failed to include all of plaintiff's alleged impairments. When the ALJ posed the hypothetical to the VE, he only included the limitations that plaintiff (1) can perform simple and repetitive job tasks and (2) have occasional public contact in an indoor work environment. Plaintiff contends that the ALJ should have included all of his alleged limitations – to which he testified – in the hypothetical question, *i.e.*, his right-leg weakness, headaches, that he walks with a limp, etc. For the following reasons, the Court rejects this argument.

As noted above, the record clearly reflects that the ALJ incorporated into the hypothetical question all of plaintiff's disabilities supported by evidence and recognized by the ALJ. *See Masterson v. Barnhart*, 309 F.3d 267, 273-74 (5th Cir. 2002). Moreover, plaintiff had the opportunity to cross-examine the VE and in fact altered the hypothetical to incorporate further limitations. (Adm. Rec. at 58-59). Indeed, counsel for plaintiff read a section of Fontenelle's report to the VE and explicitly asked if, with the limitations listed by Fontenelle, plaintiff would be able to do perform medium work. (*Id.*). The VE responded that plaintiff could not. (*Id.* at 59).

But the Court has already held that substantial evidence supports the ALJ's determination of plaintiff's credibility, the little weight accorded to the opinion of Fontenelle and the lack of limitations imposed by Mandich. Accordingly, this evidence, cited by plaintiff as support for the limitations that he sought to include in the hypothetical question, do not help him here. Indeed, even plaintiff admitted in his memorandum in support that his medical records "do not explicitly provide

these limitations . . . ." (Pl.'s Mem. Supp. at p. 18). The ALJ need not consider limitations in a hypothetical question that the evidence does not support nor need he consider evidentiary assumptions that he ultimately rejects. *Masterson*, 309 F.3d at 273-74; *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985). Because the ALJ concluded that no objective evidence supported plaintiff's additional limitations as severe impairments, he properly disregarded them in the hypothetical question that he posed to the VE. The Court thus rejects this argument.

## VI. CONCLUSION

For the reasons outlined above,

The Court finds that plaintiff has failed to demonstrate that substantial evidence does not support the ALJ's conclusion that he is not disabled nor his RFC determination. Accordingly,

**IT IS RECOMMENDED** that the plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion be GRANTED and that plaintiff's complaint be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 2nd day of March, 2012.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**